IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiffs,<br><br>    vs.<br><br>MOHAMMED ZIBOON,<br>    Defendant. | Case No. 07-10120-01-JTM |

**MEMORANDUM AND ORDER**

  This matter comes before the court on defendant Mohammed Ziboon's motion to suppress, (Dkt. No. 17) which challenges the validity of the arrest made by ATF agents on June 4, 2007, and on the United States' motion in limine (Dkt. No. 45), which seeks to prohibit the defendant, Mr. Ziboon, from introducing evidence of his alleged status as a lawful permanent resident.

  The court held an evidentiary hearing on the suppression motion at which it reviewed the entire video tape of Mr. Ziboon's interview with ATF agents. After thoroughly considering the parties arguments and the evidence, the court denies both motions.

**I. Findings of Fact**

  Mr. Ziboon is charged with four counts, stemming from the separate purchases of two firearms. Counts one and two charge Mr. Ziboon with making a false statement during the acquisition of a firearm from a licensed firearms dealer, in violation of 18 U.S.C. § 922(a)(6).

Counts three and four charge Mr. Ziboon with falsely claiming to be a United States citizen, in violation of 18 U.S.C. § 911.

On April 16, 2007, and again on May 3, 2007, Ziboon purchased two .45 caliber handguns from the Mr. Pawn pawnshop located at 2339 South Oliver, Wichita, Kansas. When purchasing the guns, Mr. Ziboon filled out a Firearms Transaction Record Form (ATF Form 4473), on which he falsely claimed to be a United States Citizen, failed to list his issued alien number, and failed to indicate that he was under indictment in any court for a felony.

While conducting a compliance inspection of the pawnshop, Investigator Tom Noren noticed Ziboon's purchases, and noted that he was born in Baghdad on January 1, 1981 (January 1st is a common birth date assigned by Immigration Customs Enforcement (ICE) when immigrants enter the United States).  His suspicions aroused, Mr. Noren then passed this information to Intelligence Specialist John Ham.

Mr. Ham contacted ICE and was informed that although Ziboon was lawfully in the United States, his recently requested immigration status change was denied.  Although Ziboon did not have a record in NCIC and thus passed the Brady check, Ziboon did have a record in the Treasury Enforcement Communication System (TECS), which revealed that he was wanted for murder in Iraq.  Ziboon later denied involvement in the murder.

At the suppression hearing, ATF agents Neal Tierney, Kevin Bradford and Wesley Williamson each testified that on June 4, 2007, they went to Mars Mart Convenience store (Ziboon's workplace) identified themselves, and asked Ziboon the location of the firearms

that he had purchased. Ziboon answered the agents, and informed them that as part owner of the store, he bought the guns for protection. Williamson found and seized two guns, one of which Mr. Ziboon had purchased from the pawnshop.

After the seizure of the firearms, Ziboon agreed to be interviewed at the ATF office and was transported there by the agents. Prior to the interview, Ziboon was given his Miranda rights, and then waived those rights both verbally and by signing a form. Ziboon explained that the manager of the store asked Ziboon to purchase a firearm, and that the first gun was later exchanged for the second. He also appeared confused about his immigration status, as well as his ability to purchase firearms. The interview lasted approximately one hour and ten minutes, although the defendant remained in ATF custody for a total of about two hours and twenty minutes. During that time, Ziboon was allowed a break to use the restroom, to pray, and to call and meet with a friend outside the presence of agents. The interview ended when Ziboon invoked his right to counsel, and was ultimately arrested.

## I. Analysis

### A. Arrest

Mr. Ziboon contends that there was not probable cause to arrest him on June 4, 2007, and therefore any statement made during his interview should be suppressed as fruit of the poisonous tree. To support his claim that he was under arrest throughout his time with the ATF agents, Mr. Ziboon points to Agent Williamson's recitation of Ziboon's rights at the start of the interview. The government counters that Mr. Ziboon was not under arrest when he made the incriminating statements and it is therefore immaterial whether probable cause

existed to arrest him on June 4, 2007.  To support this claim, the government points to the testimony of ATF agents Williamson and Tierney, who both claimed that Mr. Ziboon agreed to travel with the agents to the ATF office to talk, and that the defendant was not restrained in any manner while he rode in the front seat of the car on the way downtown.  Further, Mr. Ziboon was not restrained during the interview, and was only placed in handcuffs after he was told he was under arrest near the completion of the interview.

Mr. Ziboon's reliance on the reading of Miranda rights is misplaced.  Informing a suspect of his Miranda rights does not necessarily signal the beginning of an arrest; rather, a suspect must be Mirandized when he is in custody and interrogated.  *Cortez v. McCauley*, 478 F.3d 1108, 1113 (10th Cir. 2007).  To hold that an arrest has necessarily occurred due to the recitation of one's Miranda rights would discourage the reading of rights; instead, law enforcement should be encouraged to inform suspects of their constitutional rights, without fear that the single act of reading those rights necessarily indicates that an arrest has occurred.

Further, Mr. Ziboon's focus on the actual time of his arrest is misplaced.  In Terry stop situations, courts have held that when an officer's actions exceed what is reasonably necessary under the totality of the circumstances, the stop can only be justified by consent or probable cause.  *United States v. Melendez-Garcia*, 28 F.3d 1046, 1051 (10th Cir. 1994).  Although Mr. Ziboon's situation does not involve a Terry stop, it is analogous in that an officer's continued detainment of a suspect may only be justified by probable cause, supporting an arrest, or consent.  It is undisputed that Mr. Ziboon consented to go with the officers to the ATF office, and thus the officers did not need probable cause to transport Mr.

Ziboon to the station and question him. Once at the office, Mr. Ziboon was treated with dignity and respect; he was read his rights, allowed breaks to pray, and allowed to contact his friend and speak with that friend outside of the presence of agents. Although Mr. Ziboon's English was not perfect, it seemed apparent to the court that he understood the questions being asked of him, and he was able to respond accordingly. Mr. Ziboon's presence in an interrogation room and his waiver of his Miranda rights are not sufficient to establish that an arrest occurred. *See United States v. Perdue*, 8 F.3d 1455 (10th Cir. 1993) (holding that based on circumstances, the use of firearms, handcuffs, and other forceful techniques did not per se transform a *Terry* detention into a full custodial arrest, which would have required probable cause).

Based upon the careful review of the videotaped interrogation and the evidence presented in this case, this court finds that Mr. Ziboon was not under arrest during his interview and thus there is nothing that would merit the suppression of evidence.

### B. Probable Cause

Even if Mr. Ziboon was arrested during his interview with the ATF agents, that arrest would have been supported by probable cause. "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonable trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (citing *Jones v. Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988)). Contrary to the defendant's assertions, the ATF agents did not approach Mr. Ziboon solely because of an Iraq

5

warrant; rather, the ATF agents were alerted to Mr. Ziboon based upon violations of gun laws as well as the outstanding arrest warrant from Iraq. Accordingly, if the agents needed to arrest Mr. Ziboon, they would have had probable cause.

### C. Waiving of Miranda

Finally, Mr. Ziboon asserts that his statements were not made voluntarily, because he did not waive his Miranda rights knowingly and voluntarily. The court rejects this argument. The video tape of the interview clearly shows the ATF agent reading Mr. Ziboon his rights. Mr. Ziboon then verbally waived those rights, as well as signing a written waiver. Finally, Mr. Ziboon's comprehension of those rights is evidence by his invocation of his right to counsel at the end of the interview. Accordingly, this court finds that Mr. Ziboon's waiver of his Miranda rights was both knowing and voluntary.

### D. Motion in Limine

The government seeks to prevent Mr. Ziboon from arguing that he had status as a lawful permanent resident at the time of his arrest, and therefore was able to lawfully possess a firearm because it believes that the defendant's alleged status as a lawful permanent resident has no relevancy at trial under the allegation of the indictment. Mr. Ziboon argues that the materiality of his alleged false statement is directly at issue in the case.

This court denies the government's motion in limine; what Mr. Ziboon felt his immigration status was is relevant and the question of materiality should be presented to the jury for consideration.

IT IS ACCORDINGLY ORDERED this 10th day of December, 2007 that the defendant's motion to suppress involuntary statements and fruits of a warrant-less arrest (Dkt. No. 17) is denied.  Further, defendant's motion for extension of time to file briefs on the motion to suppress (Dkt. No. 35) is denied as moot.  Finally, the government's motion in limine (Dkt. No. 45) is denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE